[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff and defendant were married on June 10, 1977. After a highly contested hearing concerning property and finances, the marriage was dissolved on May 14, 1998. There were numerous post judgment motions. This action was heard over several days on the following: 1. defendant's motion for contempt coded #172; 2. plaintiff's motion for contempt coded #173; and 3. plaintiff's motion for contempt coded #174. Both parties requested attorney's fees in connection with the motions.
A. MOTION FOR CONTEMPT #172
1. Medical Expenses Pendente Lite and Post-Judgment
 The testimony at the hearing suggests that the two parties disagree as to what should be considered as medical expenses and which expenses are to be shared equally.
In the decision rendered by the Honorable Elaine Gordon on May 14, 1998, the Court ordered that each party is to pay one half of all unreimbursed health related expenses for the minor children. The Court also stated that the order is to be read expansively so it includes things like eyeglasses, orthodontia, things that are health related. [Tr. 5/14/98 at pg. 19].
Attorney Lilburn inquired on May 14, 1998 whether the order CT Page 9900 was retroactive so as to include the pendente lite expenses. The Court responded that the order was prospective but there was a previous order and that the parties were going to split the expenses. [Tr. 5/14/99 at pg. 21].
The previous order was entered on December 17, 1996 after the parties reached an agreement.
The parties had agreed and it was ordered on 12/17/96 that each would pay one half of the premiums at Yale in the amount of $540.60. There was another court order after approval of an agreement, on May 12, 1998. The plaintiff was ordered to pay one half of any unreimbursed/uninsured medical expenses from the summer of 1996 to the present time [May 12, 1998 Order coded #161].
The defendant's Exhibit E is the listing of the pendente lite expenses and Exhibit F is the listing of the post judgment expenses. This court has considered the testimony, the previous agreements and the comments at the dissolution and finds the following:
As to the pendente lite expenses submitted, excluding the two payments to Nancy Close, the plaintiff is responsible for $5,363.45 [one half of $10,907.90 minus $180.00]. As to the post judgment expenses the plaintiff is responsible for $733.17 [one half of $1,466.34]. The plaintiff has paid 450.00 towards the medical expenses and should be given a credit for that amount. The plaintiff owes $5,646.62.
The plaintiff has submitted documentation of unreimbursed medical expenses in the amount of $113.34. The defendant is responsible for $56.67 as her half of those expenses.
2. M.D. Health Plan
The Court had ordered that the children be placed on the M.D. Health Plan available to the plaintiff. [Tr. 5/14/98 at pg. 19]. He applied for the coverage as available through his employer the second week of June 1998. The effective date of the coverage was July 1, 1998. The plaintiff did not have any control over the effective date of the coverage. The plaintiff notified the defendant of the coverage on July 14, 1998, at a meeting with the facilitator Barbara Nordhaus. It is unfortunate that the level of trust between the parents had sunk to such a level that Ms. CT Page 9901 Sudick did not accept the information as given. However, if she had any doubts at that time she could have contacted the employer for verification in the same manner she did in January 1999. Instead, she chose to continue coverage under her plan until she received the medical cards in September 1998.
The court finds that the plaintiff is not responsible for half of those costs. However, the amount of $102.00 deducted by Mr. Nighswander from the child support payments before the effective date of the coverage must be repaid.
3. Relocation
The parties entered into a written agreement which was accepted and ordered on May 12, 1998. Paragraph #9 of the agreement, [coded #161] states as follows: "There shall be 60 day written notification of any relocation planned by either party to the other party." The plaintiff moved from his residence to his significant other's house over Labor Day weekend 1998. He notified the defendant in writing on September 8, 1998. The move was within the same town, with same zip code and reduced the physical distance between the parents. Furthermore, the defendant had the address and telephone number since February 1998.
Generally the issue concerning relocation arises when there is a planned move by the party with physical custody to some place which would disrupt the visitation schedule of the non-custodial parent or result in non-compliance of visitation orders. At the time of the agreement, one of the parties was contemplating a move out of state. The court having considered the evidence and the circumstances surrounding the sixty day notice requirement finds that a move to a different residence in the same town, resulting in closer proximity to the defendant is not a relocation in violation of the court's order.
B. MOTION FOR CONTEMPT #173
The attorney for the minor children had filed a motion requesting an updated Family Relations Study [coded #177] on March 12, 1999 after hearing testimony the matter was referred for a custody evaluation and supplementary orders were entered. This order incorporated the substance of this motion.
C. MOTION FOR CONTEMPT #174 CT Page 9902
1. Property
At the time of the dissolution of the marriage on May 14, 1998, orders were issued concerning the division of property. [Tr. 5/14/98 at pgs. 17-18]. At the time of the trial, the plaintiff had submitted proposed orders dated March 1, 1998. [plaintiff's Exhibit 4a] The proposed orders included an itemized list of property which had previously been included in a pre-trial memo of December 17, 1997. [plaintiffs Exhibit 2a]. The defendant was put on notice as early as December 17, 1997 as to the items the plaintiff wanted. Neither party indicated that any items were missing, unavailable, lost or previously disposed of.
The entire African Art Collection was awarded to the plaintiff excluding the antelope mask. The mask was a gift from the plaintiff to the defendant. Unfortunately, the collection had not been itemized. There is now a disagreement as to what items were included in that collection. The plaintiff has valued the art collection at $9,500.00. The defendant seems to agree with that amount as it is listed in her claims for relief dated February 23, 1999 where she had requested half of the African Art Collection. There were photos of the collection presented at trial in May 1998 and in this trial. There was no dispute as to the existence of the items in the photographs at the time of the trial in May 1998 when the orders were issued. The plaintiff has testified in these proceedings that he is unsure of the last time that he saw the ivory tooth pick holder and tooth picks. The plaintiff claims some items were received but damaged. The evidence presented does not establish that the defendant damaged any items from the collection.
There were two Japan posters considered in the orders at the dissolution and each party was awarded one. [Tr. May 18, 1998 at pg. 18]. The plaintiff has received one Japan poster as previously ordered. All the items from the trip to Japan were awarded to the plaintiff, Mr. Nighswander. The defendant testified that she had packed the items awarded to the plaintiff over a period of time. Some of the items were previously stored in the attic. The defendant did not notify anyone that any items awarded to the plaintiff were missing. Only the kimono has been turned over to the plaintiff.
The Coptic church photograph was awarded to the plaintiff. It was listed at the time of trial as a gift to him from Georgette Ballance. The defendant testified at this hearing CT Page 9903 that she gave away the photograph to Georgette Ballance. The defendant therefore knows the whereabouts of the photograph and can turn it over.
It was undisputed that removing photographs from the frames was a common practice used by both parties for transporting them. Ms. Sudick testified that the plaintiff did not ask for the frames so she did not give them to him when she gave him the photographs. The frames are to be given to the plaintiff.
The tools identified at the time of the order of May 18, 1998 are as follows: workbench miter saw, reciprocating saw, saber saw, circular saw, chain saw and drill press. The list was not exhaustive. The tools were awarded to the plaintiff [Tr. 5/14/98 at pg. 18]. The defendant gave the circular saw, belt sander, gelt, and sledge hammer to her father, sold the miter saw, reciprocating saw, drill press and workbench. The defendant claims that the chain saw broke. No explanation was given as to the circumstances under which the saw broke. The plaintiff is entitled to those items or reimbursement for replacement cost.
There were some personal items awarded to the plaintiff. Unfortunately items such as suits, belts, ties, gloves are not unique or readily identified. The personal items which are unique and are readily identifiable are to be given to the defendant or payment for those items. The items listed are The American Flyer Chair, child's rocker, books, tent and Lagardo Tackett items. The defendant sold other camping equipment specifically the cookware and stove at a tag sale. She has to compensate the plaintiff.
Both parties have exaggerated the value of the items which appear to have more sentimental value than monetary value. As noted by Judge Gordon at the time of the dissolution, in seeking values for property, everybody puffs [Tr. May 14, 1998 pgs. 14 and 15]. The defendant is not very credible on the issue relating to the property. She described Mr. Armstrong as a friend. Mr. Armstrong described himself as her boyfriend since the fall of 1996 and he spends two to four days per week at her house. Mr. Armstrong saw Ms. Sudick pack some of the items and was present for one pick up. He heard Mr. Nighswander ask where was the rest of his stuff. He also notice that Mr. Nighswander was upset that there were no more boxes turned over to him. Mr. Armstrong went with Ms. Sudick to a tag sale the following weekend where one or two of the boxes with items for sale CT Page 9904 contained some African art work. Janet Lebman was present when Ms. Sudick wrapped some items and placed in a box. She was present on one of the pickups. She saw the knapsack but does not know what was in it. She saw the plaintiff take eight to ten boxes to the van but does not know what was in the boxes.
As to the personal papers the plaintiff claims were not turned over, those items can be reissued or reconstructed. The defendant disobeyed the Court order regarding the African Art Collection and the tools but is not in contempt of court.
The court has considered the evidence Conn. General Statutes36b-62, 46b-87.
Neither party is found in contempt. However, the court need not find contempt of court to make the other party whole. Therefore it is ordered:
 Orders
1. The plaintiff is ordered to pay $5,646.62 as his share of pendente lite and post judgment medicals.
2. The defendant is ordered to pay $56.67 for her share of unreimbursed medicals.
3. All payments are to be made directly to the provider. Where the full amount has already been paid to the provider, upon proof of payment, the other party is to be reimbursed within ninety days.
4. The plaintiff is ordered to pay $102.00 for the amount erroneously deducted from his child support payments for the cost of medical coverage before the effective date of such coverage.
5. The defendant is ordered to turn over any items from the African Art Collection still in her possession within 10 days. She is further ordered to pay the plaintiff $1,400.00 as compensation for those items not returned.
6. The defendant is ordered to turn over the items from the trip to Japan. If they are no longer in her possession, she is to pay the plaintiff $500.00 as compensation for those items not returned. CT Page 9905
7. The defendant is ordered to turn over the photograph of the Coptic church to the plaintiff.
8. The defendant is ordered turn over to the plaintiff the frames that were removed from the photographs.
9. The defendant is ordered to turn over to the plaintiff the tools he was awarded or reimburse him at replacement cost not to exceed $2,500.00.
10. The defendant is ordered to turn over the personal items or reimburse the plaintiff at replacement cost not to exceed $1,000.00.
11. Each party shall pay their own counsel fees. Their earnings and earning capacity are relatively equal.
Crawford, J.